NOT FOR PUBLICATION

FILED
JUL 23 2009
UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

In re

JAMES B. MASON

Debtor.

Case No. 07-11206

PRIDE MOBILITY PRODUCTS CORPORATION

Plaintiff,

vs.

JAMES B. MASON

Defendant.

Adv. No. 07-1162

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Trial in this adversary proceeding was held June 18, 2009. Following the hearing, the court took the matter under submission. This memorandum contains findings of fact and conclusions of law required by Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52. This is a core proceeding as defined in 28 U.S.C. §157(b)(2)(J).

Prior to trial, plaintiff, Pride Mobility Products Corporation ("Pride") and defendant, James B. Mason ("Mason") entered into a Joint Pretrial Conference Statement that set forth undisputed facts and the elements of jurisdiction. On March 11,

130

2009, the court entered an order approving the Joint Pretrial Conference Statement. The court incorporates the undisputed facts in the Joint Pretrial Conference Statement as findings of fact. As relevant, those facts are set forth hereinbelow.

Undisputed Facts from Order Approving Joint Pretrial Conference Statement.

**JURISDICTION IS NOT IN DISPUTE AND REQUIRES NO FURTHER PROOF**

1. This Court has jurisdiction over this adversary proceeding pursuant to (i) 28 U.S.C. §1334, as a civil proceeding arising under the Bankruptcy Code or arising in a case commenced under the Bankruptcy Code; and (ii) 28 U.S.C. § 157 as a civil proceeding which constitutes a core proceeding. Venue lies in the Eastern District of California, pursuant to 28 U.S.C. §§ 1408(1) and 1409(a), as this is a proceeding arising under the Bankruptcy Code or arising in a case commenced by Defendant under Chapter 7 of title 11 of the Bankruptcy Code in the Eastern District of California.

**BENCH TRIAL IS NOT IN DISPUTE AND REQUIRES NO FURTHER PROOF**

2. Neither party has requested a jury trial. This shall be a bench trial.

**UNDISPUTED FACTS AS AGREED TO BY PLAINTIFF AND DEFENDANT**

3. Defendant was a forty percent (40%) member and manager of Sierra Home Medical, LLC ("Sierra"). Plaintiff sold motorized wheelchairs on credit to Sierra, which open invoices totaled

$481,303.19. Sierra was a distributor of motorized wheelchairs and related products to the public. On March 10, 2005, Defendant executed a personal guarantee of Sierra's debt to Plaintiff. On December 22, 2006, Sierra paid its bankruptcy counsel a retainer of $2,500. At the end of January 2007, Defendant ceased working for Sierra. On February 13, 2007, Sierra filed voluntary petition for relief under Chapter 7 of the Bankruptcy Code.

4. Defendant filed for relief under Chapter 7 of the Bankruptcy Code on April 27, 2007. The Trustee appointed is James Edward Salven. Plaintiff filed an Adversary Complaint on September 28, 2007, requesting that the Court deny Defendant discharge under Chapter 7 of the Bankruptcy Code pursuant to §§ 727(a)(2)(A) and 727(a)(4)(A) of the Bankruptcy Code.

**UNDISPUTED FACTS ESTABLISHED THROUGH PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

5. The following facts were established as **Undisputed Facts** under the Court's order regarding Plaintiff's Motion for Summary Judgment related to Plaintiff's first claim for relief in the Complaint to deny discharge of Debtor pursuant to 11 U.S.C. § 727(a)(2)(A):

    a. On January 3, 2007, Plaintiff filed a complaint against Defendant for $481,303.19 ("State Court Complaint") for breach of personal guarantee in the Superior Court of California

for the County of Tulare ("State Court"), Case No. 06-222022.;

  b. Defendant was personally served with the complaint on January 8, 2008;

  c. On January 11, 2007, Plaintiff filed and served an Application for Writ of Attachment against Defendant;

  d. Defendant executed his Declaration in Support of his Opposition to the Application for Writ of Attachment on February 6, 2007;

  e. On February 7, 2007, Defendant executed a loan application ("Loan Application") for a loan of $480,000 ("Cash-Out Loan") to refinance and take equity out of the real property owned by Defendant located at 675 E. Teal Circle, Fresno, California 93720;

  f. On February 12, 2007, escrow closed on the Cash-Out Loan, and Defendant received the Loan Proceeds of $119,223.84;

  g. On February 13, 2007, the State Court granted the Application for Writ of Attachment in favor of Plaintiff and against Defendant for $481,303.19;

  h. On February 13, 2007, Sierra Home Medical, LLC ("Sierra") filed its bankruptcy petition;

  i. Between February 7, 2007 and February 14, 2007, Defendant paid $7,500 towards his daughter's college tuition;

  j. On February 12, 2007, Defendant and his wife,

Margaret Mason, made four deposits totaling $19,920.00 to their Individual Retirement Accounts (IRA) at Golden 1 Federal Credit Union;

k. On February 15, 2007, Defendant paid BMW $1,792.26 for the balance of the lease buy-out for his BMW convertible;

l. On February 15, 2007, Defendant paid for repairs to his BMW in the amount of $3,675.48 ("BMW Repairs"), which is the car he claims as exempt in his Bankruptcy Schedules;

m. On February 17, 2007, Defendant entered into a contract ("Pre-Paid Construction Contract") with Benson Construction for improvements to the Real Property whereby Defendant agreed to pre-pay the improvements totaling $48,000;

n. Under the Pre-Paid Construction Contract, Benson Construction began work on the Real Property on February 24, 2007, and was scheduled to finish on April 18, 2007;

o. On February 22, 2007, Defendant paid the entire $48,000 to Benson Construction under the Pre-Paid Construction Contract;

p. On February 22, 2007, Defendant entered into a contract with Vern's Plumbing for the installation of a water heater totaling $990 at the Real Property;

q. On March 21, 2007, Defendant bought a clothes dryer from Lowes for $448.00;

  r. On April 20, 2007, Defendant paid off an alleged loan to his IRA in the amount of $39,925.72;

  s. In the Statement of Financial Affairs, Defendant listed his income for 2006 at $54,000 and his income for 2007 at $8,500; and

  t. Defendant stopped working for Sierra at the end of January 2007;

 6. The following facts were established as **Undisputed Facts** under the Court's order regarding Plaintiff's motion for summary judgment related to Plaintiff's second claim for relief in the Complaint to deny discharge of Debtor pursuant to 11 U.S.C. § 727(a)(4)(A):

  a. Before obtaining the Cash-Out Loan on the Real Property, Defendant owed a first mortgage to Countrywide Home Loan Service LP of approximately $271,000 and a second mortgage with Chase Manhattan Mortgage of approximately $76,000, for a total of approximately $347,000;

  b. On January 31, 2007, Defendant had the Appraisal prepared whereby the Real Property was appraised at $600,000;

  c. Defendant's Schedule A lists the Real Property with a value of $525,000;

  d. Defendant listed in his bankruptcy schedules assets of $739,301, secured liabilities of $523,000 and unsecured

liabilities of $2,976,059.20;

  e. Defendant's schedules list Thomas Sanchez as an unsecured creditor of Defendant's with an unsecured claim against Defendant in the amount of $2,020,000;

  f. Defendant is not a party to the Sanchez Action, and Thomas Sanchez has not asserted a claim against Defendant's bankruptcy estate;

  g. Defendant lists 10 judgments or pending actions in which he is or was a party in response to paragraph 4 of Defendant's Statement of Financial Affairs that requests Defendant to list all suits and administrative proceedings to which Defendant is or was a party within one year immediately preceding the filing of the bankruptcy case;

  h. Defendant was a party to just one action, the State Court Action filed by Plaintiff;

  i. Defendant's Schedule F lists approximately 76 unsecured creditors with liabilities of $2,976,059.20, and no codebtors;

  j. Thirteen claims totaling $901,648.96 (including Plaintiff's claim of $510,256.36) have been filed against Defendant's estate;

  k. On June 11, 2007, Plaintiff filed a 2004 application for production of documents from Defendant;

l. On July 27, 2007, Defendant filed an Amendment to Schedules B, C and F, whereby Defendant added the asset of his interest in the proceeds from a life insurance policy totaling $10,065.21 ("Life Insurance Proceeds");

m. On August 14, 2007, Defendant filed a Second Amendment to Schedule B, whereby Defendant added the asset of a loan ("Alleged Boat Loan") from July 3, 2006 to his son-in-law in the amount of $14,910.46; and

n. On December 6, 2007, the Trustee filed a motion for order approving a compromise with Defendant whereby Defendant waived any exemption to the Life Insurance Proceeds in exchange for the Trustee's agreement not to seek recovery of the Alleged Boat Loan or $39,124.68 paid to the Defendant's IRA.

Applicable Law.

This adversary proceeding commenced with a complaint to deny discharge under Bankruptcy Code § 727(a)(2)(A) and § 727 (a)(4)(A). Section 727(a)(2) states that:

> "The court shall grant the debtor a discharge, unless
>
> . . .
>
> (2) the debtor, with intent to hinder, delay, or defraud a creditor . . . , has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed -
>
> (A) property of the debtor, within one year before the date of the filing of the petition . . . ."

Collier on Bankruptcy states that the debtor may maximize protection by converting non-exempt assets into exempt assets. Thus, denial of discharge must be based on extrinsic evidence beyond the conversion of assets from non-exempt into exempt property. 6 Collier on Bankruptcy 727.02[3][g](15th ed. Rev. 2009). "But if the debtor converts nonexempt property to exempt property with the intent to defraud creditors, the conversion is objectionable and may provide the basis for denying a discharge under section 727(a)(2). Id. at § 727.02[3][f]. A denial of discharge under these grounds may also justify disallowing the debtor's exemption. Id.

One court found a conversion of non-exempt assets into exempt assets to be fraudulent after a Debtor making $180,000.00 per year (in 1976) converted every one of his nonexempt assets into exempt assets under Texas law on the eve of bankruptcy. The court found that allowing the debtor a discharge would be an abuse of the bankruptcy process. First Texas Savings Ass'n, Inc. v. Reed, 700 F.2d 986, 992 (5th Cir. 1983). In another case, a homemaker converted her non-exempt home into cash, and then into insurance policies within 6 months of filing for bankruptcy. The debtor sold the property to relatives, and rented the home from them after the sale. Despite the fact that the transactions limited creditors' recoveries, the court found insufficient extrinsic evidence of fraud. Bank of Pa. v. Adlman, 541 F.2d 999

(2d Cir. 1976).

Courts have relied on the following factors in determining whether the conversion of non-exempt assets into exempt assets constitutes fraud: (1) whether the debtor obtained credit to buy the exempt property; (2) whether the conversion occurred after entry of a large judgment against the debtor; (3) whether the debtor engaged in a pattern of sharp dealing before bankruptcy; (4) whether an unusually large amount of property was claimed as exempt; (5) whether the debtor misrepresented the value of assets and kept the transfers secret; and (6) whether the conversion rendered the debtor insolvent.  6 Collier on Bankruptcy at § 727.02[3][g].

Bankruptcy Code § 727(a)(4)(A) states that the court shall not grant the debtor a discharge if "the debtor knowingly and fraudulently, in or in connection with the case - (a) made a false oath or account . . . ."

Generally, a misstatement under § 727(a)(4)(A) must be material if the court is to deny the debtor a discharge because of it.  The subject matter of a false oath is material if it is "related to debtor's business transactions, or if it concerns the discovery of assets, business dealings, or the existence or disposition of the debtor's property.  If the estate would have no interest in property that was omitted from a schedule, the omission is not material."  6 Collier on Bankruptcy at

§ 727.04[1][b].

The court's findings on the disputed issues of fact.

The only witness at trial was James Mason. The facts not determined by stipulation or by summary adjudication primarily revolved around Mason's intent when he applied for and obtained the Cash-Out Loan. The Cash-Out Loan refinanced his preexisting deeds of trust on his home and also resulted in him obtaining, on February 12, 2007, cash proceeds of $119,223.84. The Cash-Out-Loan was in the context of plaintiff having sued Mason for breach of personal guarantee on January 3, 2007, and having personally served him on January 8, 2007. Further, on January 11, 2007, plaintiff filed and served on Mason an application for writ of attachment. On February 6, 2007, Mason executed a declaration in support of opposition to the application for writ of attachment.

So much is undisputed. The question is whether Mason had the intent to "hinder, delay, or defraud" Pride when he obtained and then spent the Cash-Out Loan proceeds

The court generally finds Mason not to be a credible witness. As will be set forth in greater detail, the court finds that Mason intended to take the cash from the Cash-Out Loan to utilize it for himself, his family, payment of other loans, and remodeling/repairing his house. The timing of the Cash-Out Loan was not coincidental. The court finds that Mason intended to use the funds from the Cash-Out Loan to deprive Pride from obtaining

them in and through the attachment process.

Generally Mason was an evasive witness. He stated that he decided to refinance his house in late December 2006 or early January 2007. He was quite clear that the decision was not after January 9, 2007. The court finds this statement to lack credibility.

Mason's credibility was further eroded by the incorrect statements in the loan application for the Cash-Out Loan. The loan application stated that his income was $13,000 a month. He stated that while $13,000 a month was not his income at the time he applied for the loan, it had been his income in 2005.

However, in his Statement of Financial Affairs filed with his bankruptcy case in April 2007 and executed under penalty of perjury, he stated that his annual income in 2005 was $54,000. This inconsistency further shows Mason's lack of credibility.

Mason stated that he did not "recall" if the lender told him he would not qualify for the loan if he put down his real income on the loan application. According to Mason, he had applied for a residential loan in 2004 and just put the same information in the application he made in 2007. It is inherently incredible that he made $13,000 per month in 2004, considering the Statement of Affairs and his testimony.

Mason did not read the loan application before he signed it in February 2007.

Also, the loan application stated that he owned a boat. He did not own a boat.

Mason obtained an appraisal of his residence dated January 31, 2007, that valued the property at approximately $600,000. Subsequently, he entered into a home improvement/repair contract for which he prepaid $48,000. When he filed his bankruptcy case on April 27, 2007, he stated under penalty of perjury that he believed the value of the residence to be $525,000.

With the proceeds of the Cash-Out Loan, Mason paid in advance for the home improvement/repair contract; he made repairs to a car; he purchased appliances; he deposited $19,920 to his IRA and to his wife's; and he paid a "loan" to his IRA in the amount of $39,925.72. At the end of January 2007, Mason stopped working for Sierra.

Mason testified that he made the expenditures using the money from the Cash-Out Loan to take care of his family. A disabled parent lived with him and his wife, and he thought it was important to make the improvements/repairs to the home for her care.

When asked why all the expenditures were made just prior to the bankruptcy filing, Mason's answer was "Can you be more specific?" He testified that he did not recall the date that he decided to file bankruptcy. He had no answer for how he intended to pay the Cash-Out Loan given that after late January 2007, he

did not have a job.

Mason's Schedules of Assets and Liabilities show many claims for which he was not personally liable. He testified that his attorney told him to list everything that might be a liability. Therefore, he listed claims against Sierra that might potentially turn into a claim against him.

Mason did not review the bankruptcy schedules. He just signed them.

Under the circumstances, the court finds that Mason did transfer property with the intent to hinder and delay Pride. Mason borrowed on the equity in his house and used that money for purchases that made it unavailable to his creditors. At the time he obtained the Cash-Out Loan, he was aware that he was being sued on his personal guarantee. He had been served with the complaint. When the loan closed, he had been served with the writ of attachment. Of course, Pride must have made a demand on Mason prior to filing the complaint on the guarantee, but no evidence about the date of that demand was introduced. Exhibit "3" is the state court complaint against Sierra Home Medical LLC, George E. Stafford, and James B. Mason. The seventh cause of action is for breach of Mason's guarantee.

Paragraph 43 states that "plaintiff has demanded" that Mason pay his guarantee. Therefore, the court infers that well before the filing of the state court action on the guarantee, Mason was

aware that he was being asked to pay on the guaranteed obligation and that Sierra had not paid the obligation which he had guaranteed.

At the time Mason received the Cash-Out Loan proceeds, he owed $271,427.68 to Countrywide on the first deed of trust. He owed $77,127.86 to Chase Manhattan Mortgage on the second deed of trust. Thus, the encumbrances on the residence were $348,555.54. The appraised value was $600,000. Mason claimed an exemption of $50,000 on Schedule C under California Code of Civil Procedure § 704.730(a)(1). (Amendment to schedules filed July 27, 2007.) After the Cash-Out Loan, the total encumbrance on the residence was $480,000. Thus, in obtaining the Cash-Out Loan, Mason converted non-exempt equity in the residence to cash which he then utilized in a way that made it unavailable to his creditors.

The timing of the Cash-Out Loan is significant. It occurred when Mason knew that he was being sued on his personal guarantee and it closed at a time when he knew the creditor was seeking a writ of attachment.

Immediately prior to the bankruptcy case, Mason utilized the cash from the Cash-Out Loan to make funds unavailable to his creditors. In addition to prepaying the construction contract, he also contributed money to his IRA and to his wife's IRA and repaid a "loan" to the IRA account.

Mason testified that he did not read the loan application for the Cash-Out Loan and that he did not read his bankruptcy schedules. Of course, the schedules are signed under penalty of perjury.

For all the above reasons, the court finds and concludes that the obtaining of the Cash-Out Loan and the use of the proceeds to put them beyond the reach of his creditors is behavior that constitutes actions of Mason with intent to hinder, delay, and defraud Pride. Therefore, Mason's discharge will be denied pursuant to Bankruptcy Code § 727(a)(2)(A).

The claim under § 727(a)(4)(A) is a closer case. Did the misstatements in Mason's Schedules and Statement of Affairs constitute false oaths? The court finds that they did. In particular, listing the residence as having a value of $525,000 four months after an appraisal showed it had a value of $600,000 is a material misstatement. In many bankruptcy cases, debtors must estimate the value of their residence. Most people who file chapter 7 have not had an appraisal of their residence performed right before they file bankruptcy. In this case, however, Mason did have the benefit of that appraisal. Listing the house at $75,000 less than the appraisal showed is a material misstatement.

On the other hand, listing numerous creditors in the schedules does not constitute a material misstatement. Under the

circumstances of the business for which he worked having failed, it was reasonable for Mason to list all the creditors that might later conclude he should be sued for those business debts.

Based on the material misstatement about the value of the residence in the bankruptcy schedules, the court finds and concludes that Mason's discharge should be denied under Bankruptcy Code § 727(a)(4)(A).

Based on the findings of fact and conclusions of law set forth above, judgment will be entered for plaintiff. Counsel for plaintiff shall present an appropriate form of judgment.

DATED: 7/23/09

WHITNEY RIMEL, Judge
United States Bankruptcy Court

PROOF OF SERVICE BY MAIL

STATE OF CALIFORNIA )
) ss.
COUNTY OF FRESNO )

I am a citizen of the United States and a resident of the county aforesaid; I am over the age of eighteen years and not a party to the within above-entitled action; my business address is 2656 U.S. Courthouse, 1130 O Street, Fresno, California, 93721. On July 23 2009, I served the within document on the interested parties in said action by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the United States mail at Fresno, California, addressed as follows:

Ronald A. Clifford, Esq.
BLAKELEY & BLAKELEY LLP
4685 MacArthur Court, Suite 421
Newport Beach, CA 92660

David L. Emerzian, Esq.
McCormick, Barstow, Sheppard,
Wayte & Carruth
P. O. Box 28912
Fresno, California 93720-1501

I certify (or declare), under penalty of perjury, that the foregoing is true and correct. Executed on July 23, 2009, at Fresno, California.

Kathy Torres
Kathy Torres, PLS